1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| KHAMON KONETHONGKHAM, | 1: 10-cv-00859-LJO-BAM |
| | **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| Plaintiff, | |
| v. | |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

18

19

## I.   INTRODUCTION

Plaintiff Khamon Konethongkham ("Plaintiff") seeks judicial review of an administrative decision denying her claim for disability benefits under the Social Security Act, Title VI (the "Act").   Pending before the Court is Plaintiff's motion for summary judgment and the cross-motion for summary judgment of defendant Michael Astrue, Commissioner of Social Security ("Commissioner").  Plaintiff filed her complaint on April 24, 2010.  (Doc. 1.)  Plaintiff filed her summary judgment motion on January 21, 2011. ( Doc. 26.)   The Commissioner filed his summary judgment cross-motion and opposition on March 23, 2011.  (Doc. 30.)  Plaintiff filed her Reply Brief on April 7, 2011.  (Doc. 31.)  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument to United States Magistrate Judge

1

1  Barbara A. McAuliffe for findings and recommendations to United States District Judge

2  Lawrence J. O'Neill.

## II.    BACKGROUND

**A.    Overview of Administrative Proceedings**

On June 28, 2006, Plaintiff applied for disability insurance benefits under Title XVI of the Social Security Act, alleging disability beginning July 28, 2000. (Administrative Record ("AR") at 13.)  Plaintiff claims to suffer from depression, posttraumatic stress disorder and chronic knee pain. (Pl's Brief, 2: 5-7, Doc. 26.)

Plaintiff's application  was initially denied and denied again on reconsideration. (AR at 84-88, 90-93.)  Plaintiff's application was subsequently denied by an Administrative Law Judge ("ALJ") in a decision issued on June 18, 2008. (AR at 13-19.)  The Appeals Council denied review on February 25, 2010. (AR at 2-4.)  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g), 1383(c).  (Doc. 1.)

**B.    Plaintiff's Background**

Plaintiff was born on September 18, 1954.  (AR at 252.)  Plaintiff, a native of Laos who is now a permanent resident of the United States, claims to suffer from depression, posttraumatic stress disorder, chronic knee pain and numb hands.  (AR at 109-124.)  Plaintiff alleges that, as a teenager, she witnessed the murder of her brother when her family attempted to flee from Laos. (AR at 124, 181, 280.)  It was at this time, Plaintiff alleges, that her depression and posttraumatic stress disorder began.  *Id.*  Plaintiff currently lives with her three children and her husband.  (AR at 254.)

**C.    Plaintiff's Testimony At the Administrative Hearing**

On February 22, 2008, Plaintiff testified before the ALJ regarding her claim for disability. (AR at 244-248.)  As Plaintiff does not speak or understand English, a Laotian interpreter translated the proceedings.  (AR at 244, 251.)  Plaintiff testified that she neither speaks nor understands any English, and can not read a newspaper headline.  (AR at 260.)

Plaintiff has no education past the fourth grade.  (AR at 253.)  Plaintiff initially  testified that she never had a job outside the home.  (AR at 253.)  Plaintiff later testified that she had

2

worked selling fruit for three months in 1998.  (AR at 253-54.)  Plaintiff stated she made

"around" $500 a month selling fruit.  (AR at 253.)  When questioned by Plaintiff's counsel,

Plaintiff testified to the following regarding the fruit selling job in 1998: (1) she made

approximately $200 per week; (2) she didn't work every week; and (3) the weeks Plaintiff did

work, Plaintiff would work approximately three days a week.  (AR at 276-77.)  Plaintiff did not

disclose these earnings to the IRS.  (AR at 254.)

Plaintiff testified that she had an unrestricted driver's license, but has been too afraid to

drive for the past two years. (AR at 255.)  Plaintiff said she does not brush her own teeth, but she

dresses herself, bathes herself, and prepares simple meals three times a day.  (AR at 255-56.)  On

average, plaintiff washed dishes three times a day, made the bed every day and changed the

sheets once a week.  (AR at 257-58.)  Plaintiff testified she went to temple and the market once a

month.  (AR at 258.)   Plaintiff cares for her cat.  (AR at 258.)  Plaintiff spends approximately 30

minutes cleaning the kitchen two times a week.  (AR at 259.)  Plaintiff sweeps and dusts the

furniture about once a week.  (AR at 259.)  Plaintiff waters her garden and spends approximately

20 minutes a week pulling weeds from her garden.  (AR at 259-260.)  Plaintiff also spends about

three hours a day watching television.  (AR at 260.)

Plaintiff initially testified she could carry 20 pounds, but later testified she could only

hold a gallon of milk for about five minutes.  (AR at 261, 274.)  Plaintiff testified she could stand

for ten minutes before having to sit down.  (AR at 261.)  Plaintiff can sit for ten minutes, and

walk for twenty minutes before having to rest.  (AR at 261.)  Out of an eight hour work day,

Plaintiff stated she would need to lie down for about three hours.  (AR at 261.)  Plaintiff stated

she can concentrate for about five minutes at a time, and would require ten minutes of rest before

being able to concentrate for five more minutes.  (AR at 262, 274-75.)

Plaintiff testified she felt constant pain in her back, head, knee and hands.  (AR at 275-

76.)  Medications relieves her pain "a little."  (AR at 276.)  Plaintiff has problems with

depression, and has been "diagnosed with [a] condition because of an event that causes [her]

stress and that event occurred sometime ago."[1]  Twice a week, Plaintiff has nightmares of people coming to kill her.  (AR at 280.)  Plaintiff's stress and nightmares are the result of her witnessing her brother's murder.  (AR at 280.)  Plaintiff, however, does not have problems dealing with people as a result of these events.  (AR at 281.)   When asked why she could not work, Plaintiff stated it was due to her inability to concentrate and her physical pain.  (AR at 281.)

**D.    Medical History**

       **1.    Medical Evidence Relating to Plaintiff's Knee and Back Pain**

          **i.    University Medical Center Medical Records**

    In April of 2006, Plaintiff complained of back pain and knee pain.  (AR at 196.)  At this time, Plaintiff was proscribed an anti-inflammatory medication.  (AR at 196.)  In July and October of 2006, Plaintiff complained of swollen legs.  (AR at 190-91.)  On November 2, 2006, Plaintiff reported knee and back pain. (AR at 189.) At this time, Plaintiff was assessed with degenerative joint disease.  *Id.*

          **ii.    Agency Consultant Rustom Damania, MD**

    On October 7, 2006, Plaintiff submitted to a comprehensive internal medicine evaluation by Dr. Rustom Damania.  (AR at 200.)  Plaintiff required an interpreter at the evaluation. Plaintiff complained of pain in her right knee, and hearing impairments in both ears.  (AR at 200.)  Plaintiff did not appear to have any difficulty leaving or entering the office.  (AR at 201.) Regarding Plaintiff's right knee, Dr. Damania reported that the knee was slightly tender, but not swollen.  There were no crepitations, and no signs of acute or chronic inflamation.  (AR at 201.) X-ray revealed there was no fracture or malalignment.  Two small osteochondromata were seen arising from portions of the tibia and fibula, however, the exam was otherwise negative.  (AR at 203.)  Dr. Damania concluded the pain in Plaintiff's right knee was possibly caused by osteoarthritis, but did not provide a definitive diagnoses as such.  (AR at 202.)

---

[1] This testimony is the result of a leading question from the ALJ, which was an attempt to ask Plaintiff if she suffers from, or had ever been diagnosed with, Post Traumatic Stress Disorder.  Due to complications in the translation of this disorder from English to Laotian, Plaintiff could not understand the information sought when asked if she suffered from Post Traumatic Stress Disorder. (AR at 277-79.)

For Plaintiff's functional assessment, Dr. Damania stated that Plaintiff should be able to stand, sit and walk six hours in an eight hour day. Plaintiff does not require an assistive device. Plaintiff could lift 20 pounds occasionally, ten pounds frequently. Plaintiff does not have any postural limitations, unless she has to do frequent kneeling. (AR at 202.)

### iii.    Wesley G. Jackson, M.D.

On October 27, 2006, Dr. Jackson, a state agency physician, reviewed Plaintiff's medical records. (AR at 232-239.) Dr. Jackson noted Dr. Dimania's examination, which showed a normal range of motion in Plaintiff's right knee, slight tenderness, no swelling or crepitation, no signs of acute or chronic inflamation. (AR at 238.) Dr. Jackson reviewed the X-ray of Plaintiff's knee, which he opined did not show any changes of arthritis or other process that would be expected to cause pain. *Id.* Dr. Jackson also noted that Plaintiff was not taking pain mediation. *Id.* Dr. Jackson concluded that Plaintiff's right knee condition was non-severe. (AR at 238-39.) Dr. Jackson also concluded that Plaintiff did not have any exertional, postural or manipulative limitations. (AR at 232-33.)

### 2.    Medical Evidence Relating to Plaintiff's Mental Impairments

### i.    Fresno County Health Services Agency - Mental Health Department

From 2006 - 2007, Plaintiff received mental health treatment and medication from the Fresno County Health Services Agency - Mental Health Department. (AR at 157-186.) Plaintiff complained of depression, sleep problems, poor concentration, forgetfulness, regretfulness, anger outbursts, seeing shadows, crying a lot, a general lack of energy and continued anxiety. (AR at 157-186.)

Doctors diagnosed Plaintiff with Major Depression and PTSD. Treatment notes from that period record Global Assessment Functioning (GAF) scores between 45 and 55. (AR at 157-186.) Plaintiff was proscribed Prozac, Seroquel and Fluoexetine. *Id.*

### ii.    Dr. Richard Engeln

On October 13, 2006, Dr. Engeln performed a psychological evaluation of Plaintiff at the agency's request. (AR at 206.) Plaintiff had an interpreter at this appointment. (AR at 206.) Based on the results of this examination, Dr. Engeln determined that: Plaintiff is capable of job

1  adjustment in a context where instructions are "unidemential" and normal supervision is

2  provided; (2) Plaintiff's concentration and social skills are adequate for work adjustment; (3)

3  Plaintiff is able to perform one-to-two step simple job instructions, but not able to receive

4  complex or technical job instructions.  (AR at 209.)

5                    **iii.     Dr. Archimedes Garcia**

6          On October 30, 2006, Dr. Garcia, a state agency psychiatrist, reviewed Plaintiff's medical

7  records and offered the following opinions: (1) Plaintiff suffers from depression; (2) Plaintiff

8  suffers from PTSD; (3) Plaintiff has mild restrictions of daily living; (4) plaintiff has mild

9  difficulties maintaining social functioning; and (5) plaintiff has mild difficulties maintaining

10  concentration, persistence or pace. (AR at 217-230.)

11  **E.     Vocational Expert's Testimony At the Administrative Hearing**

12          During the administrative hearing, a vocational expert, Cheryl Chandler (the "VE")

13  provided testimony regarding Plaintiff's ability to perform her past relevant work.[2]  The ALJ first

14  established that Plaintiff's previous job selling fruit in 1998 was substantial gainful activity.  (AR

15  at 264.)  The VE testified that the job of fruit seller, under the Dictionary of Occupational Titles,

16  was considered a sales attendant.  (AR at 265.)  The VE testified that the job of a sales attendant

17  is an unskilled light job.  (AR at 265.)

18          In the hypothetical posed to the VE to determine Plaintiff's ability to perform her past

19  work, the ALJ used the testimony of Dr. Rustom Damania to establish Plaintiff's limitations.

20  (AR at 266.)  The ALJ inquired if an individual of "the same age, education and language and

21  experience group as the Claimant . . . [who] does not need an assistive device, should be able to

22  stand and walk about six hours out of eight and sit about six hours out of eight, should be able to

23  lift 20 pounds occasionally, 10 pounds frequently, no postural limitations. . . . avoid frequent

24  kneeling, no manipulation limitations," could perform Plaintiff's past relevant work.  (AR at

25

26          [2] The ALJ posed five hypotheticals to the VE concerning both Plaintiff's ability to perform her past relevant
27  work, as well as her ability to perform other jobs in the national economy.  Discussed below, the Court affirms the
    ALJ's decision finding Plaintiff could perform her past relevant work at Step Four.  Accordingly, the Court omits
28  discussion of the Vocational Expert's hypotheticals concerning Plaintiff's ability to perform jobs in the national
    economy at Step Five.

266.)  The VE responded that this hypothetical individual could perform her past relevant work as a fruit seller or, under the Dictionary of Occupational Titles, a sales attendant.  (AR at 265-66.)

For the second hypothetical, specifically addressing Plaintiff's mental symptoms, the ALJ used the psychological evaluation of Dr. Engeln.  (AR at 268.)  The ALJ asked if a hypothetical person who "can do simple tasks using one to two-step tasks" could perform Plaintiff's past relevant work.  (AR at 268.)  The VE responded Plaintiff could perform this work.  *Id.*

**F.    ALJ Findings**

In reaching his decision that Plaintiff has not been under a disability within the meaning of the Social Security Act since June 28, 2008, the ALJ made the following findings:

1.    Plaintiff has not engaged in substantial gainful activity since June 28, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.*);

2.    Plaintiff has the following severe impairments: major depressive disorder, adjustment disorder, posttraumatic stress disorder (65F, 34F); hearing deficits; reduced vision, left eye (F41-40)(20 CFR 416.920(c));

3.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926);

4.    Plaintiff's Residual Functional Capacity: The ALJ adopted the findings of state agency consultant Dr. Jackson, who  concluded Plaintiff's right knee condition was non-severe, and that Plaintiff did not have any exertional, postural or manipulative limitations.  As for Plaintiff mental symptoms, the ALJ found that Plaintiff had mild restrictions in activities of daily living and social functioning. Additionally, Plaintiff had mild difficulties with respect to persistence, pace and concentration;

5.    Plaintiff is capable of performing her past relevant work of fruit selling.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity;

1        6.    Plaintiff does not have a disability within the meaning of the Social Security Act.

2  (AR at 15-19.)

3  ## III.   DISCUSSION

4  ## A.   Standard of Review

5        Congress has provided a limited scope of judicial review of a Commissioner's decision.

6  *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an

7  ALJ, when the determination is not based on legal error and is supported by substantial evidence.

8  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  Substantial evidence is "more than a

9  mere scintilla," *see Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a

10  preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial

11  evidence "means such evidence as a reasonable mind might accept as adequate to support a

12  conclusion."  *Richardson*, 402 U.S. at 401.  If the evidence could reasonably support a finding of

13  either disability or non-disability, the finding of the Commissioner is conclusive.  *Sprague v.*

14  *Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

15        In order to qualify for benefits, a claimant must establish that he is unable to engage in

16  substantial gainful activity due to a medically determinable physical or mental impairment which

17  has lasted or can be expected to last for a continuous period of not less than twelve months.  42

18  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

19  such severity that he is not only unable to do his previous work, but cannot, considering his age,

20  education, and work experience, engage in any other kind of substantial gainful work which

21  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

22  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

23  Cir. 1990).

24        In an effort to achieve uniformity of decisions, the Commissioner has promulgated

25  regulations which contain, *inter alia*, a five-step sequential disability evaluation process.  20

26  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

27  that Plaintiff: (1) had not engaged in substantial gainful activity since June 28, 2006; (2) has an

28  impairment that is considered "severe" based on the requirements in the Regulations (20 CFR §§

416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) did not have any exertional, postural or manipulative limitations and could perform her past relevant work as a fruit seller; and (5) could perform jobs that exist in significant numbers in the national economy.  (AR at 15-19.)

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

**B.    The ALJ Properly Found Plaintiff Could Perform Past Relevant Work At Step Four**

Plaintiff argues the ALJ erred in finding Plaintiff could perform past relevant work at Step Four for the following reasons: (1) Plaintiff had not previously engaged in substantial gainful activity; (2) the ALJ improperly rejected Plaintiff's testimony; (3) the ALJ failed to include Plaintiff's inability to speak English in his residual functional capacity assessment, or in his hypotheticals to the VE; and (4) the ALJ improperly rejected the opinion of the agency's consultative physician.  The Court addresses each argument in turn.[3]

**1.    The ALJ Properly Concluded Plaintiff Had Previously Engaged in Substantial Gainful Activity At Step Four.**

Under the Step Four analysis, past relevant work is defined as (1) substantial gainful activity, (2) performed in the last 15 years, and (3) performed long enough for Plaintiff to learn how to do the work.  20 CFR 416.965(a). "Work activity is 'substantial' if it 'involves doing significant physical or mental activities.'" *Corrao v. Shalala*, 20 F.3d 943, 946 (9th Cir. 1993). Part time work may be "substantial."  *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990); *Katz v. Sec'y of Health and Human Serv.,* 972 F.2d 290, 291-92 (9th Cir 1992) (20 hours of work per week was "substantial"); *Byington v. Chater,* 76 F.3d 246, 250 (9th Cir. 1996) (on-call,

---

[3] Plaintiff argues the ALJ made additional errors at Step 5 in finding that Plaintiff was not disabled for the following reasons: (1)The ALJ failed to include Plaintiff's inability to speak English in his residual functional capacity assessment, or in his inquiries to the vocational expert; (2) the ALJ failed to apply Social Security Regulation 00-4p; and (3) the ALJ should have applied Medical-Vocational Rule 202.00(d) to find Plaintiff disabled. Each of these arguments are moot in light of the Court's ruling that the ALJ properly found Plaintiff could perform her past relevant work at Step Four.

substitute bus driver job was substantial).  If a claimant earned an average of $500 per month by working, such work is presumptively substantial gainful activity.  20 CFR 416.974(b)(2), Table 1.

Plaintiff argues the Record fails to establish Plaintiff's previous work as a fruit seller constitutes substantial gainful activity.  Specifically, Plaintiff argues that, at the administrative hearing, Plaintiff testified that she did not work some weeks, and when she did work, she worked three days a week.  Plaintiff further argues that for weeks she did work, she made around $200 a week.  Plaintiff suggests this testimony undermines Plaintiff's previous testimony that Plaintiff made around $500 a month in this job.

The Commissioner responds that Plaintiff admitted she earned at least $500 per month for three months in 1998 working as a fruit seller.  The Commissioner further argues that because the job of a fruit seller is unskilled work, it would only take Plaintiff a month, at the most, to learn.  SSR 00-4p (unskilled work requires a short demonstration up to one month to learn).

Plaintiff's previous work as a fruit seller is substantial gainful activity.  The testimony offered by both the Commissioner and Plaintiff indicate Plaintiff made approximately $500 a month in 1998.  Plaintiff's argument that Plaintiff made $200 a week, while not working every week, supports Plaintiff's other testimony that Plaintiff made approximately $500 a month.  For instance, if Plaintiff worked every week, according to the testimony offered by Plaintiff, Plaintiff would have made a little more than $800 a month.  At the other end of the spectrum, if Plaintiff worked every-other week, Plaintiff would have made a little more than $400 a month.  Based on the testimony appearing in the record as a whole, there is substantial evidence in the record to support Plaintiff's testimony, and the ALJ's finding, that Plaintiff earned approximately $500 a month in 1998.  This amount is presumptively substantial gainful activity.  20 CFR 416.974(b)(2), Table 1.  This is true despite the fact that Plaintiff may have only worked three days a week.  *See, Keyes v. Sullivan,* 894 F.2d 1053, 1056 (9th Cir. 1990); *Katz v. Sec'y of Health and Human Serv.,* 972 F.2d 290, 291-92 (9th Cir 1992); *Byington v. Chater,* 76 F.3d 246, 250 (9th Cir. 1996).

1    **2.      Plaintiff's Testimony and Credibility finding**

2    **i.      Legal Standard**

3    A two step analysis applies at the administrative level when considering a claimant's

4    subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the

5    claimant must produce objective medical evidence of an impairment that could reasonably be

6    expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the

7    claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

8    claimant's testimony regarding the severity of her symptoms only if he makes specific findings

9    that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which

10   testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

11   *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and

12   convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court

13   to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p

14   (ALJ's decision "must be sufficiently specific to make clear to the individual and to any

15   subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons

16   for that weight").

17   An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

18   *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

19   reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

20   testimony by the claimant that appears less than candid, unexplained or inadequately explained

21   failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

22   activities, claimant's work record, or the observations of treating and examining physicians.

23   *Smolen,* 80 F.3d at 1284; *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

24   **ii.      The ALJ's Credibility Determination is Based on Clear and**

25   **Convincing Reasons**

26   In rejecting Plaintiff's testimony concerning the intensity, persistence and limiting effects

27   of her symptoms, the ALJ stated the following:

28

1

In terms of credibility, the claimant has a dismal work history with no full
substantial gainful activity years.  Also, at the current hearing the claimant denied
ever working (accord Exhibit D14).  However, as noted in the prior decision at pp.
4-6 dated July 27, 2000, the claimant worked as an in home health care provider
from 1986 until 1998.  She also sold fruit for 3 months in 1998 (at substantial
gainful activity levels, even though she did not report these earnings).  She also
did not fully report all her work history on her application, reporting only her
farming activity in Laos, and thus not providing Social Security all the necessary
information as required.

Further diminishing claimants credibility under SSR 97-7p, claimant does a wide
range of activities of daily living.  For example, she lives with [a] husband and
three children (youngest 27, oldest 29); has a driver's license with no restrictions
(although she testified she now gets rides from people); feeds herself, dresses
herself, and bathes and showers.  Claimant also testified that she does simple meal
preparation 3 times a week, dishes three times a day; makes her bed every day;
changes sheets on her bed once a week; feeds her cat; cleans the kitchen up to 30
minutes 2 times a week; sweeps once a week; dusts once a week; pulls weeds in
vegetable garden 20 minutes a week; and watches TV 3 hours a day.

I note that claimant seemed to exaggerate at the hearing.  For example, she
testified she could only concentrate 5 minutes at a time, and then must rest
mentally for 10 minutes before she could pay attention for another 5 minutes, yet,
she paid attention and responded appropriately throughout the entire hearing
(around 1 hour, 10 minutes).  Claimant also testified she worked for about 3
months in 1998 (at substantial gainful activity levels), but did not report those
earnings (to the IRS) which also diminishes her credibility (as does the fact that in
her Disability Report she listed no prior work (E8)).

(AR at 17-18.)

The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony.  As to

Plaintiff claims of a disabling mental impairment, the ALJ properly noted that Plaintiff paid

attention and responded appropriately during the entire hearing - lasting approximately 70

minutes - contrary to Plaintiff's claim she could only concentrate for five minutes at a time.  *See*

*Thomas,* 278 F.3d at 960 (ALJ may consider demeanor in evaluating credibility).

Looking to Plaintiff's physical limitations, the ALJ properly found that Plaintiff's daily

activities diminished her credibility.  Plaintiff testified that her regular activities included

gardening, cooking, cleaning, shopping and the ability to generally care for herself.  These

activities are inconsistent with Plaintiff's claims of constant pain, and reveal Plaintiff to be quite

functional.  *See Rollins v. Massanari,* 261 853, 857 (9th Cir. 2001) (claimants allegation of

"totally disabling pain" undermined by her daily activities); *Burch v. Barnhart,* 400 F.3d 676,

680 (9th Cir. 2005) (claimant's daily activities indicates she was "quite functional").

As applied to both these symptoms, the ALJ noted Plaintiff's dismal work history which indicates a lack of motivation to work. *Thomas,* 278 F.3d at 959 (claimants poor work history showed little propensity to work, which negatively affected her credibility regarding her inability to work). The ALJ notes that Plaintiff had failed to report her earnings to the IRS, which also negatively affects her credibility. *Thomas,* 278 F.3d at 959 (Claimant's general "reputation for truthfulness" bears on her credibility on the issue of her impairment); *Bunnell,* 947 F.2d at 346-47 (ALJ may consider relevant character evidence). Lastly, the ALJ observed that Plaintiff's subjective symptom testimony was contrary to the available medical evidence. *Rollins,* 261 F.3d at 857 (whether testimony is corroborated by objective medical evidence is a relevant factor in ALJ's credibility analysis.)

The ALJ's reasons for rejecting Plaintiff's testimony are clear and convincing.

**3.      Plaintiff's Inability to Speak English Does Not Undermine the ALJ's Step Four Conclusion that Plaintiff Could Perform Past Relevant Work[4]**

The Step Four inquiry asks the ALJ to evaluate whether a claimant can perform the job as she *actually performed it* or as it is generally performed in the national economy. *See* Social Security Ruling ("SSR") FN6 82-61; *see also Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). While Plaintiff's ability to communicate in English is a necessary vocational factor to be considered at Step Five, vocational factors, such as literacy, are not considered when determining whether an individual can perform past relevant work. *See* 20 C.F.R. § 416.960(b) & (c). Rather, the residual functional capacity finding determines what a claimant can do in spite of her medically determinable impairments. 20 C.F.R. § 416.945; SSR 96-8p ("It is incorrect to find that an individual has limitation or restrictions beyond those caused by his or her medical impairment(s)").

Here, Plaintiff's inability to speak English is a vocational factor that is properly considered at Step Five. Plaintiff's ability to perform her past relevant work does not concern

---

[4] It is unclear if Plaintiff argues the ALJ was required to consider Plaintiff's inability to speak English at Step Four. The Court generally views this argument, based on Plaintiff's briefing, as having applicability only at Step Five. Nonetheless, the Court addresses whether the ALJ should have considered Plaintiff's inability to speak English at Step Four.

Plaintiff's restrictions beyond her medical impairments.  Moreover, even assuming Plaintiff's past relevant work may *generally* require the ability to communicate in English, because Plaintiff *actually* performed this work despite her inability to communicate in English, the ALJ's decision to omit Plaintiff's inability to speak English at Step Four was proper.

### 4.    The ALJ Properly Evaluated the Medical Evidence

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir.2001); 20 C.F.R. § 404.1527(d)(1)-(2). The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  The Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506.  If contradicted by another doctor, the opinion of an examining doctor can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). "This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability.  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).  If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion.  *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*;

1    *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart,* 340 F.3d 871 (9th Cir.

2    2003); *Morgan v. Comm'r of Soc. Sec. Admin*., 169 F.3d 595 (9th Cir.1999).

3              **i.      The ALJ's Rejection of Dr. Damania's Medical Opinion Is Immaterial**

4                        **to The Step Four Finding**

5              Plaintiff alleges the ALJ improperly rejected the opinions of the agency's examining

6    physician, Dr. Damania, whose residual functional capacity assessment limited Plaintiff to light

7    level exertion.  Specifically, Plaintiff argues the ALJ substituted his own opinions for those of

8    Dr. Damania's, and the ALJ otherwise failed to provide specific and legitimate reasons for

9    rejecting Dr. Damania's opinions.  The Commissioner responds the ALJ's adoption of consulting

10   physician Dr. Jackson's medical opinions, who found Plaintiff did not have any physical

11   limitations, was based on specific and legitimate reasons because they conformed to the Record

12   as a whole.  Additionally, the Commissioner argues the ALJ's rejection of Dr. Damania's

13   opinions were proper because they conflicted with the majority of medical evidence in the

14   Record.

15             The Court need not determine whether the ALJ properly rejected the opinions of Dr.

16   Damania.  In the ALJ's first hypothetical to the VE, the ALJ used the light level exertion

17   limitations recommended by Dr. Damania.   (AR at 266.)  It was this first hypothetical that was

18   used to determine Plaintiff could perform her past relevant work.  The remaining hypotheticals

19   which assumed Plaintiff could perform work in the national economy at greater exertional levels

20   applied only to the Step Five analysis.  The ALJ's rejection of Dr. Damania's opinions in the

21   Step Five hypotheticals had no bearing on the ALJ's determination at Step Four.  As such, even

22   if the ALJ improperly rejected Dr. Damania's opinions for *some* of his findings, such error was

23   harmless.  *See Steeves v. Comm. Soc. Sec.,* 2009 WL 3165217 (E.D. Cal. 2009) ("The Ninth

24   Circuit has applied harmless error analysis in social security cases in a number of contexts.")

25

26

27

28

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court  RECOMMENDS that:

1.      Plaintiff's motion for summary judgment be DENIED;

2.      The Commissioner's cross-motion for summary judgment is GRANTED;

3.      The Clerk of Court enter judgment in favor of the Commissioner of Social
        Security and against Plaintiff Khamon Konethongkham.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    May 14, 2012              /s/ Barbara A. McAuliffe**
                                       UNITED STATES MAGISTRATE JUDGE

16